**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**HUNTINGTON DIVISION**

**ALLEN R.,**

      **Plaintiff,**

**vs.**                            **CIVIL ACTION NO. 3:25-CV-00657**

**FRANK BISIGNANO,**
*Commissioner Of Social Security***,**

      **Defendant.**

**PROPOSED FINDINGS AND RECOMMENDATION**

This is an action seeking review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) under Titles II and XVI of the Social Security Act, 42 U.S.C. §§ 401-433, 1381-1383f, respectively. By Order entered November 10, 2025 (ECF No. 3), this case was referred to the undersigned United States Magistrate Judge to consider the pleadings and evidence, and to submit proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B). Presently pending before the Court is the Plaintiff's Brief in support of his complaint (ECF No. 7) and the Defendant's (hereinafter "Commissioner") Brief in Support of Defendant's Decision (ECF No. 8).

Having fully considered the record and the arguments of the parties, the undersigned respectfully **RECOMMENDS** that the United States District Judge **DENY** the Plaintiff's request for remand (ECF No. 7), **GRANT** the Commissioner's request to affirm the final decision (ECF No. 8); **AFFIRM** the final decision of the Commissioner; and **DISMISS** this matter from the Court's docket for the reasons stated *infra*.

**Procedural History**

The Plaintiff protectively filed his applications for DIB and SSI on May 23, 2022 alleging disability beginning February 5, 2022 due to chronic severe back and hip pain, "auto fusion" of disc and hip, chronic neck pain, nerve damage in right dominant hand causing limited use, bilateral leg pain with weakness and mobility issues, hypertension, "HCL", depression and anxiety disorder, and arthritis. (Tr. at 36, 334) His claims were initially denied on July 13, 2023 (Tr. at 36, 153-162, 165-174) and again upon reconsideration on July 11, 2024 (Tr. at 36, 177-186, 187-196). Thereafter, he filed a written request for hearing on July 26, 2024 (Tr. at 217).

An administrative hearing was held on January 7, 2025 before the Honorable Francine Serafin, Administrative Law Judge ("ALJ"). (Tr. at 120-152) On February 14, 2025, the ALJ entered an unfavorable decision. (Tr. at 33-54) On March 10, 2025, the Plaintiff sought review by the Appeals Council of the ALJ's decision. (Tr. at 294-295) The ALJ's decision became the final decision of the Commissioner on September 10, 2025 when the Appeals Council denied the Plaintiff's Request for Review. (Tr. at 1-7)

On November 7, 2025, the Plaintiff timely brought the present action seeking judicial review of the administrative decision pursuant to 42 U.S.C. § 405(g). (ECF No. 2) The Commissioner filed a Transcript of the Administrative Proceedings. (ECF No. 6) Subsequently, the Plaintiff filed his Brief (ECF No. 7), in response, the Commissioner filed a Brief in Support of Defendant's Decision (ECF No. 8), and finally, the Plaintiff filed his Reply Brief reiterating his arguments in support of remand (ECF No. 9). Consequently, this matter is fully briefed and ready for resolution.

**Plaintiff's Background**

2

The Plaintiff was 41 years old as of the alleged onset date, a "younger person" during the underlying proceedings. See 20 C.F.R. §§ 404.1563(c), 416.963(c). (Tr. at 47) He has at least a high school education, and past relevant work as a deliver driver and warehouse worker. (Id.)

**Standard**

Under 42 U.S.C. § 423(d)(5) and § 1382c(a)(3)(H)(i), a claimant for disability benefits has the burden of proving a disability. See Blalock v. Richardson, 483 F.2d 773, 774 (4th Cir. 1972). A disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable impairment which can be expected to last for a continuous period of not less than 12 months . . . ." 42 U.S.C. § 423(d)(1)(A).

The Social Security Regulations establish a "sequential evaluation" for the adjudication of disability claims. 20 C.F.R. §§ 404.1520 416.920. If an individual is found "not disabled" at any step, further inquiry is unnecessary. Id. §§ 404.1520(a), 416.920(a). The first inquiry under the sequence is whether a claimant is currently engaged in substantial gainful employment. Id. §§ 404.1520(b), 416.920(b). If the claimant is not, the second inquiry is whether claimant suffers from a severe impairment. Id. §§ 404.1520(c),416.920(c). If a severe impairment is present, the third inquiry is whether such impairment meets or equals any of the impairments listed in Appendix 1 to Subpart P of the Administrative Regulations No. 4. Id. §§ 404.1520(d), 416.920(d). If it does, the claimant is found disabled and awarded benefits. Id. If it does not, the fourth inquiry is whether the claimant's impairments prevent the performance of past relevant work. Id. §§ 404.1520(f), 416.920(f). By satisfying inquiry four, the claimant establishes a *prima facie* case of disability. Hall v. Harris, 658 F.2d 260, 264 (4th Cir. 1981).

The burden then shifts to the Commissioner, McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983), and leads to the fifth and final inquiry: whether the claimant is able to perform

other forms of substantial gainful activity, considering claimant's remaining physical and mental capacities and claimant's age, education and prior work experience. Id. §§ 404.1520(g) 416.920(g). The Commissioner must show two things: (1) that the claimant, considering claimant's age, education, work experience, skills and physical shortcomings, has the capacity to perform an alternative job, and (2) that this specific job exists in the national economy. McLamore v. Weinberger, 538 F.2d 572, 574 (4th Cir. 1976).

When a claimant alleges a mental impairment, the Social Security Administration ("SSA") "must follow a special technique at every level in the administrative review process." 20 C.F.R. §§ 404.1520a(a), 416.920a(a). First, the SSA evaluates the claimant's pertinent symptoms, signs and laboratory findings to determine whether the claimant has a medically determinable mental impairment and documents its findings if the claimant is determined to have such an impairment.

Second, the SSA rates and documents the degree of functional limitation resulting from the impairment according to criteria as specified in Sections 404.1520a(c) and 416.920a(c):

> (c) *Rating the degree of functional limitation.* (1) Assessment of functional limitations is a complex and highly individualized process that requires us to consider multiple issues and all relevant evidence to obtain a longitudinal picture of your overall degree of functional limitation. We will consider all relevant and available clinical signs and laboratory findings, the effects of your symptoms, and how your functioning may be affected by factors including, but not limited to, chronic mental disorders, structured settings, medication and other treatment.
> (2) We will rate the degree of your functional limitation based on the extent to which your impairment(s) interferes with your ability to function independently, appropriately, effectively, and on a sustained basis. Thus, we will consider such factors as the quality and level of your overall functional performance, any episodic limitations, the amount of supervision or assistance you require, and the settings in which you are able to function. See 12.00C through 12.00H of the Listing of Impairments in appendix 1 to this subpart for more information about the factors we consider when we rate the degree of your functional limitation.
> (3) We have identified four broad functional areas in which we will rate the degree of your functional limitation: Understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself. See 12.00E of the Listings of Impairments in appendix 1 to this subpart.

(4) When we rate the degree of limitation in the first three functional areas (understand, remember, or apply information; interact with others; concentrate, persist, or maintain pace; and adapt or manage oneself), we will use the following five-point scale: None, mild, moderate, marked, and extreme. The last point on the scale represents a degree of limitation that is incompatible with the ability to do any gainful activity.

Third, after rating the degree of functional limitation from the claimant's impairment(s), the SSA determines their severity. A rating of "none" or "mild" will yield a finding that the impairment(s) is/are not severe unless evidence indicates more than minimal limitation in the claimant's ability to do basic work activities. Id. §§ 404.1520a(d)(1), 416.920a(d)(1).

Fourth, if the claimant's impairment(s) is/are deemed severe, the SSA compares the medical findings about the severe impairment(s) and the rating and degree and functional limitation to the criteria of the appropriate listed mental disorder to determine if the severe impairment(s) meet or are equal to a listed mental disorder. Id. §§ 404.1520a(d)(2), 416.920a(d)(2).

Finally, if the SSA finds that the claimant has a severe mental impairment(s) which neither meets nor equals a listed mental disorder, the SSA assesses the claimant's residual functional capacity. Id. §§ 404.1520a(d)(3), 416.920a(d)(3). The Regulations further specify how the findings and conclusion reached in applying the technique must be documented at the ALJ and Appeals Council levels as follows:

> At the administrative law judge hearing and the Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

Id. §§ 404.1520a(e)(4), 416.920a(e)(4).

**Summary of ALJ's Decision**

In this particular case, the ALJ found the Plaintiff met the insured status requirements through March 31, 2027. (Tr. at 38, Finding No. 1) Next, the ALJ determined that the Plaintiff has not engaged in substantial gainful activity since the alleged onset date of February 5, 2022. (Id., Finding No. 2) Under the second inquiry, the ALJ found that the Plaintiff suffered from the following severe impairments: degenerative disc disease; spondylosis; radiculopathy; arthralgia; neuropathy; and myofascial pain syndrome. (Id., Finding No. 3) At the third inquiry, the ALJ concluded that the Plaintiff's impairments or combination thereof did not meet or equal the level of severity of any listing in 20 C.F.R. Part 404, Subpart P, Appendix 1. (Tr. at 41, Finding No. 4)

The ALJ then found that the Plaintiff had the residual functional capacity ("RFC") to perform light work except he

> can climb ramps, stairs, ladders, ropes, or scaffolds, balance, stoop, kneel, crouch, and crawl occasionally. He is capable of frequent fingering, handling, and feeling with the bilateral upper extremities. The claimant is capable of tolerating occasional exposure to extreme cold, wetness, vibration, and any workplace hazards such as moving machinery or unprotected heights.

(Tr. at 42, Finding No. 5)

At step four, the ALJ found that the Plaintiff is unable to perform any past relevant work. (Tr. at 46, Finding No. 6) However, at step five, in addition to the immateriality of the transferability of job skills, the ALJ found that based on the Plaintiff's age, education, past relevant work and RFC, the Plaintiff is capable of performing other jobs in the national economy. (Tr. at 47, Finding Nos. 7-10) Finally, the ALJ determined the Plaintiff had not been under a disability from February 5, 2022 through the date of the decision. (Tr. at 48, Finding No. 11)

**Plaintiff's Challenges to the Commissioner's Decision**

The Plaintiff objects to the ALJ's evaluation of the medical opinion provided by his treating provider, Nicholas Raubitschek, M.D.[1], whose opinion is supported by the medical record, and is also work-preclusive. (ECF No. 7 at 5-9) The ALJ's explanation for discrediting Dr. Raubitschek's opinion was also unreasonable: the ALJ did not explain how the numerous instances of abnormal findings from the medical records were inconsistent with the opinion; and the objective evidence relied on by the ALJ to discount Dr. Raubitschek's opinion was based on highly selective references to the record. (Id. at 9-12) The Plaintiff argues the ALJ's improper analysis of the opinion evidence precludes meaningful judicial review, and therefore, the final decision is not supported by substantial evidence and asks the Court to remand this matter. (Id. at 12-13)

In response, the Commissioner contends that the ALJ appropriately evaluated Dr. Raubitschek's opinion, and discussed the relevant evidence of record supporting why the opinion was unpersuasive, and provided an explanation in accordance with the pertinent legal standards. (ECF No. 8 at 5-7) The ALJ evaluated the totality of the evidence, much of which was at odds with Dr. Raubitschek's work-preclusive opinion, and in any event, the ALJ was not obligated to refer to every piece of evidence in the record, but reasonably articulated why the Plaintiff's treating provider's opinion was not persuasive, which also had support from the other opinion evidence of record. (Id. at 7-10) The Commissioner argues that the final decision is supported by substantial evidence and should be affirmed. (Id. at 11)

In his reply brief, the Plaintiff reasserts his argument that this matter should be remanded because the ALJ simply did not properly explain how Dr. Raubitschek's opinion was inconsistent or unsupported by the evidence of record allowing for meaningful judicial review – especially in

---

[1] It is noted that in the written decision, Dr. Raubitschek's name is misspelled "Roubitschek".

light of the record demonstrating that the Plaintiff's condition worsened – evidence that the ALJ overlooked when evaluating the opinion evidence. (ECF No. 9)

**The Relevant Evidence of Record**[2]

The undersigned has considered all evidence of record, including the medical evidence, pertaining to the Plaintiff's arguments and discusses it below.

Medical Opinion Evidence and Relevant Medical Evidence:

The ALJ discussed the May 2022 opinion provided by Dr. Nicholas Raubitschek, noting his opined restrictions: that the Plaintiff was able to lift/carry less than 10 pounds rarely; sit less than two hours in an eight-hour workday; stand/walk less than two hours in an eight-hour workday; that the Plaintiff would need periods of walking around and a job that permitted shifting positions at will from sitting, standing, or walking; that the Plaintiff had certain postural limitations; that the Plaintiff experienced pain or other symptoms that were severe enough to constantly interfere with attention and concentration; that the Plaintiff was incapable of even "low stress" jobs; that the Plaintiff would need to take unscheduled breaks throughout an eight-hour workday; and that the Plaintiff would be absent from work more than four days per month (Tr. at 45, 457-462). The ALJ noted that Dr. Raubitschek supported his opinion by referring to the Plaintiff's low back pain, radicular lumbar pain, and spondylosis, however, the ALJ determined that Dr. Raubitschek's conclusion was inconsistent with the examination findings or imaging in the medical record (Id.).

The ALJ found Dr. Raubitschek's opinion unpersuasive, and cited an MRI of the Plaintiff's

---

[2] The undersigned focuses on the relevant evidence of record pertaining to the issues on appeal as referenced by the parties in their respective pleadings. There is no dispute concerning the Plaintiff's impairments or the medical records, accordingly, the undersigned does not belabor summarizing same herein, but instead, centers on the ALJ's evaluation of the Plaintiff's treating provider's opinion.

cervical spine taken in August 2022, revealing degenerative disc disease of C5-C6 and C6-C7, with mild spinal canal and moderate bilateral neuroforaminal stenosis, a physical examination in September 2022 which revealed tenderness over the left sacroiliac joint, an antalgic gait, and 5/5 muscle strength in all four extremities, and that the neurosurgeon did not recommend surgical intervention (Tr. at 45-46, 478-508). The ALJ also noted an MRI taken of the Plaintiff's lumbar spine which showed mild degenerative disc disease (Tr. at 46, 1159-1161)[3]; additionally, the ALJ noted that the consultative evaluator diagnosed neuropathy (Tr. at 46, 464-473)[4], and an examination revealed an antalgic gait and decreased sensation to light touch in the right lateral thigh, and that the Plaintiff exhibited 5/5 strength in the bilateral upper extremities (Tr. at 46, 1162-1197).

**<u>The Administrative Hearing:</u>**

<u>Plaintiff's Testimony:</u>

The Plaintiff testified to experiencing constant pain in his lower back that radiates down his legs, during the day and throughout the night, and that even his knees will give out (Tr. at 124-125). His hips also hurt constantly and he has to move around trying to get comfortable; he also has pain radiating into his feet, which causes him problems walking (Tr. at 126). He estimated that he can walk about 100 feet before he needs to take a break, but also when he walks, he is slow and uses a cane for assistance (Tr. at 126-129). The Plaintiff stated that he received pain management and injections, which provided only temporary relief of his symptoms (Tr. at 130).

---

[3] This lumbar spine MRI was taken in October 2024.

[4] The ALJ referred to the internal medical examination on June 16, 2023.

The Plaintiff also testified that he has neck pain that radiates into his hands, causing numbness and problems with grabbing or holding onto things (Tr. at 131-133). The Plaintiff said that his pain interferes with his sleep, and that he tries to rest during the day (Tr. at 134). The Plaintiff testified that both of his elbows hurt, and that when he tries to write or button a shirt, his hands begin to cramp (Tr. at 135). The Plaintiff also stated that he is unable to reach more than a foot from himself or reach overhead with his left arm because of pain (Tr. at 136). The Plaintiff also endorsed experiencing migraine headaches at random, and lately, they will last as long as a couple of days (Tr. at 137-138).

The Plaintiff testified that his constant pain makes it difficult to be around others because he is aggravated, and it also interferes with his ability to focus or concentrate (Tr. at 139-140). Because of his impairments, the Plaintiff also gets anxious and depressed because he is unable to support his family (Tr. at 141-142).

Vocational Expert Testimony:

In response to the ALJ's hypothetical questions, the vocational expert testified that such a person with the Plaintiff's vocational and educational profile, with the controlling RFC, would be capable of performing other jobs in the national economy (Tr. at 146-148). The vocational expert opined that an employer would not tolerate two or more absences a month, and that being off task more than 15% of a workday in a regular eight-hour workday due to needing additional breaks beyond those typically afforded by an employer would also preclude all employment (Tr. at 148-149). In response to questioning by the Plaintiff's representative, the vocational expert also testified that if a hypothetical individual is limited to sitting, standing, or walking for thirty minutes or less before they would need a break lasting five to ten minutes where they would be off task,

then the individual could not work on a full time competitive basis (Tr. at 150). Further, if the individual required a cane to ambulate and balance, then that would reduce the individual to sedentary employment (Id.). The vocational expert testified that if the individual were limited to occasionally handling, fingering, and feeling with the right dominant upper extremity, then all full time competitive employment would be precluded (Tr. at 150-151).

**Scope of Review**

The sole issue before this Court is whether the final decision of the Commissioner denying the claim is supported by substantial evidence. In Blalock v. Richardson, substantial evidence was defined as:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'

Blalock v. Richardson, 483 F.2d 773, 776 (4th Cir. 1972) (quoting Laws v. Celebrezze, 368 F.2d 640, 642 (4th Cir. 1966)). Additionally, the Commissioner, not the Court, is charged with resolving conflicts in the evidence, however, the Court determines if the final decision of the Commissioner is based upon an appropriate application of the law. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990). Further, the Courts "must not abdicate their traditional functions; they cannot escape their duty to scrutinize the record as a whole to determine whether the conclusions reached are rational." Oppenheim v. Finch, 495 F.2d 396, 397 (4th Cir. 1974). If substantial evidence exists, the Court must affirm the Commissioner's decision "even should the court disagree with such decision." Blalock, 483 F.2d at 775.

**Analysis**

Evaluation of Treating Provider Opinion Evidence:

11

As noted *supra*, the Plaintiff has argued that the ALJ failed to adequately explain why she discredited Dr. Raubitschek's opinion, contending that the ALJ's analysis fell short because she did not consider the whole record, but instead of a highly selective version of the record.

The undersigned notes that the ALJ explicitly applied the regulatory framework pursuant to Sections 404.1520c and 416.920c which pertain to claims filed after March 27, 2017. (Tr. at 42, 45) The RFC assessment lies squarely with the ALJ, not with any medical provider/examiner. 20 C.F.R. §§ 404.1546(c), 416.946(c); see Felton-Miller v. Astrue, 459 Fed.Appx. 226, 230-231 (4th Cir. 2011) ("The ALJ was not required to obtain an expert medical opinion as to [the] RFC."). A medical opinion is "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions" in the ability to perform the physical, mental, or other demands of work activity or adapt to environmental conditions. 20 C.F.R. §§ 404.1513(a)(2), 416.913(a)(2). The Regulations also define "findings . . . about a medical issue made by our Federal and State agency medical and psychological consultants at a prior level of review" as "prior administrative medical finding[s]." Id. at §§ 404.1513(a)(5), 416.913(a)(5).

To be sure, the ALJ's decision must build an accurate and "logical bridge between the evidence and the ALJ's conclusion that [a medical] opinion," Oakes v. Kijakazi, 70 F.4th 207, 214 (4th Cir. 2023), is or is not "persuasive" evidence of a claimant's allegedly disabling medical condition, see Id. at 212–213. When the court is " 'left to guess' as to how the ALJ reached her evaluation of the conflicting medical opinions in light of the evidence of record," then it cannot "review the reasonableness of her conclusions." Testamark v. Berryhill, 736 Fed Appx. 395, 398 (4th Cir. 2018).

In this case, the ALJ properly applied Sections 404.1520c and 416.920c, which emphasize the supportability and consistency factors when assessing the persuasiveness of the medical opinions of record; moreover, an adjudicator is not bound to give any specific weight or deference to any medical provider's opinion, including those provided by treating sources. Id. §§ 404.1520c(a), 416.920c(a). (Tr. at 45) Instead of assigning weight to medical opinions, the ALJ just considers the persuasiveness of a medical opinion (or a prior administrative medical finding). Id. Critically, the source of the opinion is not the most important factor in evaluating its persuasive value, instead, the most important factors are supportability and consistency. Id. §§ 404.1520c(b)(2), 416.920c(b)(2). When discussing the finding about whether an opinion is persuasive, the ALJ need only explain how she considered "the most important factors" of supportability and consistency. Id. §§ 404.1520c(c), 416.920c(c). The ALJ "may" comment on the other factors, including the source's relationship with the claimant, but generally has no obligation to do so. Id. §§ 404.1520c(b)(2)-(3), 416.920c(b)(2)-(3).

As mentioned *supra*, the Plaintiff argues the ALJ unreasonably discounted his treating source opinion, despite enjoying substantial support from the medical records. However, the ALJ found the evidence did not show that the Plaintiff was as limited as his physician opined.[5] As an initial matter, while the Plaintiff asserts that the ALJ's chosen citations to the medical record that Dr. Raubitschek's opinion was unpersuasive because they did not consider the Plaintiff's

---

[5] To the extent Dr. Raubitschek determined the Plaintiff to be disabled (i.e., that he would require unscheduled breaks throughout the eight-hour workday; be absent from work more than four times per month), the ALJ was under no obligation to accept, let alone, evaluate such an opinion pursuant to Sections 404.1520b(c)(3)(i) and 416.920b(c)(3)(i): statements on issues reserved to the Commissioner are "neither valuable nor persuasive to the issue of whether you are disabled . . . we will not provide any analysis about how we considered such evidence in our determination or decision[.]"

worsening condition over time, the undersigned observes that this would require the reviewing court to ignore the ALJ's other citations to the record throughout the written decision, but also, an adjudicator is not obligated to cite to every piece of evidence contained in the record. Thomas v. Berryhill, 916 F.3d 307, 312 (4th Cir. 2019) (citing Reid v. Comm'r of Soc. Sec., 769 F.3d 861, 865 (4th Cir. 2014); see also *Call v. Berryhill*, Civil Action No. 2:17- CV-02292, 2018 WL 4659342, *4 (S.D.W. Va. Sept. 28, 2018) ("The Court finds the ALJ's summaries and explanations sufficiently display a consideration of all the evidence, including that cited by Plaintiff. While this evidence was not explicitly mentioned, the holding in Reid applies to the instant case and a failure to specifically mention a single CT scan which noted 'mild soft tissue swelling' in a transcript of well over 800 pages does not constitute 'evidence to the contrary.' ")(Chambers, J.).

Moreover, an ALJ need not use any "particular language or adhere to any particular format" in the written decision. See Todd A. v. Kijakazi, 2021 WL 5348668, at *4 (E.D. Va. Nov. 16, 2021). In any event, to the extent the Plaintiff challenges whether the ALJ herein considered all the evidence regarding the Plaintiff's medical treatments, the ALJ here explicitly stated that she considered the entire record Tr. at 38, 42 ("After careful consideration of the entire record . . ."; Tr. at 37, 43 ("After careful consideration of all the evidence . . ."). Having so stated, this Court should "take her at her word." See Reid, 769 F.3d at 865 ("The Commissioner, through the ALJ and Appeals Council, stated that the whole record was considered, and, absent evidence to the contrary, we take her at her word."); see also Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) ("[O]ur general practice, which we see no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter."); Christina W. v. Saul, 2019 WL 6344269, *4 (D. Utah Nov. 27, 2019)("Plaintiff further argues that the ALJ erred in not

14

explicitly discussing various pieces of evidence, particularly the fact that she is participating in a structured treatment program. While the ALJ must consider all the evidence, she need not recite each piece of evidence she has considered. The ALJ stated that she carefully considered the entire record and the Court can take her at her word.").

While the Plaintiff takes issue with the ALJ's citations to certain exhibits in her discussion of Dr. Raubitschek's May 2022 opinion, it appears that the ALJ was evaluating the opinion against the evidence generated around the time it was rendered. However, significantly, Dr. Raubitschek *did not* provide *specific* findings supporting his conclusions. In the beginning of his report, he noted the Plaintiff's diagnoses: "radicular lumbar pain with lumbar spondylosis", and noted that "possible partial improvement with treatment, but likely permanent" (Tr. at 457); he listed the Plaintiff's "symptoms, including pain, dizziness, fatigue, etc." as "low back pain with pain and numbness in BL legs R>L, neck pain" (Id.). Regarding the Plaintiff's pain, when asked to characterize the nature, location, frequency, precipitating factors, and severity of the pain, Dr. Raubitschek wrote: "Low back pain constant 7-10/10 in severity; radicular BL leg pain daily, exacerbated with prolonged sitting, standing, lifting or movement" (Id.). Dr. Raubitschek identified the clinical findings and objective signs as "Limited lumbar ROM, weakness of BL legs R>L" (Id.). In short, while this information summarizes the Plaintiff's symptomatology, it does not explicitly support or explain his sitting, standing/walking, and lifting/carrying, restrictions, let alone the requirement that the Plaintiff must walk around more than seven times for one to five minutes during the eight-hour workday, in addition to taking unscheduled breaks more than seven times throughout the workday for periods of six to ten minutes long. (Tr. at 459-460)

15

Nevertheless, the ALJ's references to the medical record (specifically, Exhibits 5F, 11F, 3F, and 12F), not only support the ALJ's finding that Dr. Raubitschek's opinion was inconsistent with the evidence, but also include findings that generally support his opinion, however, those records also contain findings that do not support his more extreme limitations. For instance, the ALJ noted earlier on in the written decision that regarding the Plaintiff's degenerative disc disease, during the June 2023 examination with the consultative examiner, the Plaintiff exhibited: tenderness to palpation of both the cervical and lumbar spine; decreased range of motion; paravertebral muscle spasm of the lumbar spine; straight leg raise testing in the sitting and supine positions were positive bilaterally; 4/5 muscle strength in the bilateral upper and lower extremities; and the Plaintiff was noted to have give-away weakness. (Tr. at 43-44, 467-468) However, the examination also revealed that the Plaintiff showed no evidence of atrophy, sensory modalities were well preserved, he could stand on one leg, walk on heels and toes, perform a squat, and perform tandem gait without difficulty. (Tr. at 44, 467)  The Plaintiff also ambulated with a normal gait and did not require the use of a handheld assistive device. (Id.)

The ALJ also noted that an x-ray of the Plaintiff's cervical spine in July 2023 "evidenced advanced degeneration at C5-C6 and C6-C7, as well as multilevel facet degeneration" (Tr. at 44, 474-477). The ALJ noted a later MRI of the Plaintiff's lumbar spine from December 2023 documented "a mild bulging disc at L2-L3 causing mild bilateral neural foraminal compromise, but without spinal stenosis, which had improved when compared to a prior study." (Tr. at 44, 1146-1158) Later records considered by the ALJ included an emergency department record from March 2024, when the Plaintiff presented for a flare-up of his chronic back pain, the Plaintiff had mild tenderness with palpation at the left lumbar paraspinous muscle area, but he also had normal range

of motion of the spine, normal steady gait, ambulated without difficulty and he denied numbness or weakness or the lower extremities (Tr. at 44, 509-544). An August 2024 x-ray of the lumbar spine revealed no acute abnormalities and disc heights were well preserved (Tr. at 44, 1146-1158). The ALJ also noted that a treatment note from October 2024 indicated that the Plaintiff was using a cane, but he also showed 5/5 motor function in the extremities and sensation was intact to light touch (Tr. at 44, 1162-1197). The ALJ also observed that a radiology report from October 2024 showed only mild degenerative disc disease (Tr. at 44, 1159-1161), and the following month, the Plaintiff received a lumbar transforaminal steroid injection (Tr. at 44, 1208-1211). Further, the ALJ recognized that during a physical examination in December 2024, the Plaintiff was observed to ambulate with an antalgic gait on the right, but had no difficulty getting up from a seated position, moved around the room, stood and walked unassisted, and was grossly intact neurologically (Tr. at 44, 1212-1219).

Of further interest here is that the ALJ considered the opinion evidence provided by the State Agency medical consultants, both of whom determined the Plaintiff remained capable of medium work, however, the ALJ also found their opinions unpersuasive because they were not consistent with the medical record. (Tr. at 46, 153-162, 165-174, 177-186, 187-196) The ALJ explained that the objective evidence supported a finding that the Plaintiff was limited to less than a full range of light work – noting that an x-ray of his cervical spine showed advanced degeneration at C5-C6 and C6-C7 in addition to multilevel disc disease (Tr. at 46, 474-477). The ALJ again recognized that imaging of the Plaintiff's lumbar spine showed mild degenerative disc disease (Tr. at 46, 478-508, 1146-1158, 1159-1161).[6] The ALJ further noted that an EMG/NCS of the

---

[6] These concern office treatment records dated June 15, 2022 through September 20, 2023, hospital records dated November 20, 2020 through September 19, 2024, and imaging records dated October 11, 2024.

Plaintiff's bilateral upper extremities was consistent with an active on chronic C7 myotome radiculopathy in the right arm and an EMG/NCS of his bilateral lower extremities was consistent with an active on chronic L5 myotome radiculopathy in the left leg (Tr. at 46, 478-508). Plus, a physical examination showed that the Plaintiff had an antalgic gait and decreased sensation to light touch in the right lateral thigh, but he also showed 5/5 strength in the bilateral upper extremities (Tr. at 46, 1162-1197).

The foregoing demonstrates that the ALJ did not engage in impermissible cherry-picking[7] when evaluating the evidence in assessing Dr. Raubitschek's medical opinion (or the Plaintiff's RFC) – the ALJ acknowledged both negative and positive findings, reconciled the conflicting evidence of record, and ultimately restricted the Plaintiff to a light RFC with the aforementioned physical limitations established by the evidence of record. To the extent the Plaintiff argues the ALJ should have further explained why she did not give full credit or why she discounted some of Dr. Raubitschek's opined restrictions, as stated *supra*, while an ALJ is not required to discuss all the evidence submitted, or does not cite specific evidence; this does not mean the evidence was not considered. See Manigo v. Colvin, 2015 WL 74954, at *5 (D.S.C. Jan. 6, 2015). To reiterate, "there is no particular language or format that an ALJ must use in [her] . . . analysis as long as there is sufficient development of the record and explanation of the findings to permit meaningful review." Clark v. Comm'r of Soc. Sec., 2010 WL 2730622, at *17 (E.D. Va. June 3, 2010) (quoting Jones v. Barnhart, 364 F.3d 501, 505 (3d Cir. 2004)). The ALJ's determination is sufficient if it "not only sets forth the facts used in rendering [her] decision, but it also provides a thorough examination of the medical evidence." Id. It is also

---

[7] See Lewis v. Berryhill, 858 F.3d 858, 869 (4th Cir. 2017) (" 'An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherrypick facts that support a finding of nondisability while ignoring evidence that points to a disability finding.' " (quoting Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010)).

important that an ALJ's decision must be read as a whole in order to discern whether substantial evidence supports a finding. See Keene v. Berryhill, 732 Fed.Appx. 174, 177 (4th Cir. 2018) (finding the court "must read the ALJ's decision as a whole" and that findings in a step can support findings in other steps of the analysis).

This is not an easy case, and the Court shares some concern that the ALJ did not more clearly articulate how the evidence cited undermines each of the specific limitations assessed by the treating physician, particularly in light of the significance of that opinion to the disability determination. That said, the Court's role is not to require the most thorough or well-written decision, but to determine whether the reasoning is sufficiently clear to permit review. On balance, the Court concludes that it is. Although the ALJ's explanation leaves room for improvement, it crosses the relatively low threshold required under the substantial evidence standard. The Court therefore affirms, but does not suggest that the analysis employed here should serve as a template for future cases.

In this case, the ALJ complied with the pertinent regulations and provided an adequate explanation for her evaluation of the Plaintiff's treating source opinion evidence. "Meaningful review is frustrated – and remand necessary – only where [the court is] 'unable to fathom the [ALJ's] rationale in relation to evidence in the record.' " Britt v. Saul, 860 Fed.Appx. 256, 262 (4th Cir. 2021) (citation omitted). The foregoing analysis of the medical evidence and other evidence of record provides a reasonable explanation for the ALJ's evaluation of Dr. Raubitschek's opinion – in short, this Court is capable of fathoming the ALJ's rationale for finding the treating source opinion unpersuasive.[8]

---

[8] The record showed that additional medical records post-dating the ALJ's written decision demonstrate that while the Plaintiff continued to complain of low back pain radiating into his legs, and he continued to undergo lumbar epidural steroid injections. (Tr. at 16-24) Of interest here is that the Plaintiff's providers still found that surgical intervention was not warranted, and notwithstanding the Plaintiff's ongoing pain symptoms, it was noted that the Plaintiff could

To the extent that the opinion was not corroborated by the evidence of record, the ALJ was under no obligation to include those restrictions in the hypothetical to the vocational expert. See Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (concluding that an ALJ's hypothetical question need only include those impairments supported by the record); Koonce v. Apfel, No. 98-1144, 1999 WL 7864, at *5 (4th Cir. Jan. 11, 1999) (unpublished table opinion) (stating that an ALJ has "great latitude in posing hypothetical questions" and need only include limitations supported by substantial evidence in the record).

Accordingly, the undersigned **FINDS** that the ALJ's evaluation of the medical opinion provided by Dr. Raubitschek is supported by substantial evidence. The undersigned further **FINDS** that the final decision denying the Plaintiff's application for benefits is supported by substantial evidence.

## Recommendations for Disposition

For the reasons set forth above, it is hereby respectfully **PROPOSED** that the District Judge confirm and accept the foregoing findings and **RECOMMENDED** that the District Judge **DENY** the Plaintiff's request for remand (ECF No. 7), **GRANT** the Commissioner's request to affirm (ECF No. 8), **AFFIRM** the final decision of the Commissioner, and **DISMISS** this matter from this Court's docket.

The parties are notified that this Proposed Findings and Recommendation is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers, United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules

---

stand and walk unassisted, with right antalgic gait, but had no difficulty getting up from a seated position and "[m]oves around the room" (Tr. at 18). This evidence further shows that the ALJ's evaluation of Dr. Raubitschek's opinion is supported by substantial evidence, and also, that notwithstanding the Plaintiff's contention that his impairments worsened over time, the treatment modalities and his overall functioning appeared to remain stable.

6(d) and 72(b), Federal Rules of Civil Procedure, the parties shall have fourteen days (filing of objections) and then three days (mailing/service) from the date of filing this Proposed Findings and Recommendation within which to file with the Clerk of this Court, specific written objections, identifying the portions of the Proposed Findings and Recommendation to which objection is made, and the basis of such objection. Extension of this time period may be granted for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. Snyder v. Ridenour, 889 F.2d 1363, 1366 (4th Cir. 1989); Thomas v. Arn, 474 U.S. 140, 155 106 S.Ct. 466, 475, 88 L.E.2d 435 (1985), reh'g denied, 474 U.S. 1111, 106 S.Ct. 899, 88 L.E.2d 933 (1986); Wright v. Collins, 766 F.2d 841 846 (4th Cir. 1985); United States v. Schronce, 727 F.2d 91, 94 (4th Cir.), cert. denied, 467 U.S. 1208, 104 S.Ct. 2395, 81 L.E.2d 352 (1984). Copies of such objections shall be served on opposing parties, District Judge Chambers, and this Magistrate Judge.

The Clerk of this Court is directed to file this Proposed Findings and Recommendation and to send a copy of same to counsel of record.

ENTER: April 15, 2026.



Omar J. Aboulhosn
United States Magistrate Judge